**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFONZO MCCLEOD,** | : | **Civil Action No.** 26-4792 |
| **708 W Raymond Street** | : | |
| **Philadelphia, PA 19140** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **THE RENFREW CENTER,** | : | |
| **475 Spring Lane** | : | |
| **Philadelphia, PA 19128** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Alfonzo McCleod (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against The Renfrew Center (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").  In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant The Renfrew Center is a treatment facility for

eating disorder a location and corporate headquarters at 475 Spring Lane, Philadelphia, PA 19128.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

2

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII, the PHRA and the PFPO.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on January 10, 2025, alleging race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-02618 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated April 10, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and more than one year but within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA and PFPO claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.

21. In or around the end of October 2024, Defendant hired Plaintiff in the position of Prep Cook.

22. Plaintiff was well qualified for his position and performed well.

### PLAINTIFF WAS DISCRIMINATED AGAINST DUE TO HIS RACE BY HIS MANAGER AND COWORKERS

23. Throughout his employment with Defendant, Defendant's Caucasian employees subjected Plaintiff to discriminatory treatment and a hostile work environment on the basis of Plaintiff's race.

24. Tony Last Name Unknown ("LNU") ("Tony") (Caucasian), Manager, allowed for Defendant's kitchen to be a place of racism and prejudice toward Plaintiff and other African American employees of Defendant.

25. For example, Dan LNU ("Dan") (Caucasian), Cook, and Tide LNU ("Tide") (Caucasian), Cook, continuously made racially discriminatory jokes toward Plaintiff.

26. For example, when Tide asked Plaintiff to clean up and Plaintiff responded that he was already doing so, Tony told Plaintiff to "shut your Black ass up and hurry up."

27. Plaintiff told Dan and Tide that these jokes made him uncomfortable.

28. However, Dan and Tide did not cease their behavior.

29. Tony continued to allow Dan and Tide to make these jokes and continued to crack jokes with Dan and Tide in front of Plaintiff. For example, whenever Tide would ask Plaintiff

4

to help with a task, Dan would respond by telling Plaintiff that "black people don't like to work" and that he didn't have to do it.

30. By way of example, Dan told Plaintiff on multiple occasions that he had never seen a Black person move so fast. These and other racially discriminatory jokes were directed at Plaintiff on a daily basis throughout his employment.

31. Tony joined in on these remarks. For example, while Plaintiff was taking out the trash or preparing to do so, Tony would say, "Y'all Black asses take out the trash." On other occasions, when Plaintiff was speaking with Tide, Tony and Dan would say, "What do two Black people have in common?"

## TONY ALLOWED CAUCASIAN EMPLOYEE TO VIOLATE DEFENDANT'S POLICIES

32. Tony also let Caucasian employees break Defendant's policies with no repercussions.

33. For example, Dan and Tide frequently smoked under the no smoking signs, in front of Tony.

34. Tony never reprimanded or disciplined Dan or Tide for this.

## TONY FREQUENTLY REPRIMANDED AND CURSED AT PLAINTIFF

35. However, Tony frequently reprimanded Plaintiff for his work in the kitchen, cursed at Plaintiff, and treated him with disrespect. For example, Tony would instruct Plaintiff to clean the dining hall or complete a task. When Plaintiff responded that he would do it, Tony would tell Plaintiff to "shut the fuck up," or words to that effect.

## PLAINTIFF COMPLAINED TO TONY ABOUT DEFENDANT SERVING PATIENT'S EXPIRED FOOD

36. Further, Plaintiff repeatedly complained to Tony and Kim LNU ("Kim") (Caucasian), Human Resources Representative, about Defendant serving patients expired food, including on or about November 6, 2024, November 11, 2024, and November 12, 2024.

37. In response, Tony repeatedly told Plaintiff to "shut the fuck up," or words to that effect, and routinely spoke to Plaintiff in a disrespectful and deeming manner whenever Plaintiff attempted to speak.

## PLAINTIFF COMPLAINED TO HUMAN RESOURCES REGARDING THE RACE DISCRIMINATION HE WAS SUBJECTED TO AND OF DEFENDANT SERVING SPOILED FOOD

38. In or around early November 2024, Plaintiff complained in person to Kim, James LNU ("James") (Caucasian), Human Resources Representative, and Paula LNU ("Paula") (Caucasian), Human Resources Representative, about the racial discrimination at Defendant.

39. Kim instructed Plaintiff to prepare a written statement describing his complaints. Plaintiff did so, signed the statement, and provided it to Kim, who advised Plaintiff that was all he needed to do.

40. Plaintiff also complained of potential health hazards in the kitchen and issues with the food rotation in Defendant's kitchen. Plaintiff complained that Defendant served spoiled food.

41. Kim said she would set up a meeting with Plaintiff for November 13, 2024.

## PLAINTIFF MET WITH KIM AND COMPLAINED ABOUT TONY'S RACIALLY DISCRIMINATORY CONDUCT

42. On November 13, 2024, Plaintiff met with Kim.

6

43. Plaintiff complained of race discrimination and harassment that he was subjected to by Tony.

44. During that in-person conversation, Kim told Plaintiff that she would speak with Tony, with Plaintiff present, the following day.

**PLAINTIFF MET WITH KIM AND TONY AND COMPLAINED ABOUT RACE DISCRIMINATION, BUT KIM OFFERED PLAINTIFF TO RESIGN INSTEAD OF ADDRESSING HIS COMPLAINTS**

45. On or about November 14, 2024, Plaintiff met with Kim and Tony.

46. Plaintiff complained of race discrimination to both of them.

47. However, Kim went on to defend Tony's conduct.

48. Kim stated that Plaintiff was just being angry and twisted words or words to that effect.

49. Kim said she could not guarantee that Defendant would be able to make changes to address Plaintiff's complaints.

50. During the meeting, Kim offered that Plaintiff could resign and "[Defendant] would not speak about it further," or words to that effect.

51. Plaintiff refused to resign.

52. Kim then offered Plaintiff $100 to resign.

53. Plaintiff refused again, stating that he could not be bribed to resign.

**DEFENDANT TERMINATED PLAINTIFF**

54. Just a few days later, on or about November 19, 2024, Kim called Plaintiff and terminated him.

55. Kim did not provide a reason for Plaintiff's termination.

56. Defendant discriminated against Plaintiff due to his race and retaliated against him for complaining of race discrimination in violation of Title VII, the PHRA and the PFPO.

7

57. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

58. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

59. Plaintiff is a member of protected classes in that he is African American.

60. Plaintiff was qualified to perform the job for which he was hired.

61. Plaintiff suffered adverse job actions, including, but not limited to termination.

62. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

63. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

64. Defendant discriminated against Plaintiff on the basis of his protected class.

65. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

66. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

67. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

68. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

69. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (African American).

70. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RACE DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (African American).

73. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

74. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

75. Plaintiff engaged in activity protected by Title VII.

76. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

9

77. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

78. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

79. Plaintiff engaged in activity protected by the PHRA.

80. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

81. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

82. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

83. Plaintiff engaged in activity protected by the PFPO.

84. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

85. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Alfonzo McCleod, requests that the Court grant him the following relief against Defendant:

(a)    Damages for past and future wage loss;

(b)    Punitive and/or exemplary damages;

(c)    Compensatory damages for non-economic harm including, *inter alia*, mental anguish and/or emotional pain and suffering;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i)    Awarding any other extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, which the Court deems appropriate and just pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding,

11

nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: July 9, 2026                    **By:**  */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

12